HERSHBERGER *et al. v.* BLEWETT *et ux.*

*(Circuit Court, D. Washington, N. D.* June 27, 1891.)

1. QUIETING TITLE—PLEADING—COMMUNITY PROPERTY.

Plaintiff's bill alleged that a patent of certain land was in 1872 issued to the heirs at law of one S., the heirs being his mother and several brothers and sisters, and the children of deceased brothers and sisters; that plaintiff was married in 1870 to R., a son of a deceased sister; that R. died intestate, without issue, in 1871; that in 1870, after said marriage, the mother of S. conveyed her interest in the land to R.; that by virtue of the deed, and the statutes of Washington relating to the rights of married people, the share of R. and of the mother of S., deeded to him, became the common property of R. and plaintiff, and on R.'s death plaintiff became the owner in fee-simple of an undivided one-half; that defendants claimed the whole of the land under a conveyance made pursuant to a sale under a decree of the court, to which plaintiff was not a party. The bill sought to establish plaintiff's title to the shares claimed by her. *Held,* that the bill was demurrable in not stating when and where S. died, or any facts by which the court could ascertain under what act of congress the patent was issued to his heirs, and what laws as to the property rights of married people were in force, or the residence of R. and his wife, (plaintiff,) or the date of the suit under which the sale and conveyance was made to defendants, or of any reasons for plaintiff's delay in suing.

**2. Husband and Wife—Community Property.**
  Under Laws Wash. 1869, p. 319, declaring that all property acquired by a husband after marriage, by gift, devise, or descent, shall be his separate property, and that all property acquired after marriage by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property, makes property acquired by a husband by descent his separate property, and not the community property of himself and wife.

**3. Same—Non-Residents.**
  Laws Wash. 1869, p. 319, § 11, providing that in every marriage thereafter contracted in the territory the rights of husband and wife should be governed by this act, unless there was a marriage contract containing stipulations contrary thereto, and section 12, providing that the rights of husband and wife, married out of the territory prior to the passage of the act, but who should reside and acquire property therein, should also be determined by the provisions of the act, *held,* that the act did not confer any rights on a wife where she and her husband resided without the territory.

In Equity.
*Fogg & Murray,* for plaintiffs
*T. R. Shepard,* for defendants.


Hanford, J. The material averments of the complainants' bill necessary to be considered in deciding the questions raised by the defendants' demurrer are as follows: On the 15th day of December, 1872, the United States by a patent conveyed a certain tract of land in this state, to the heirs at law of one William A. Strickler, deceased; the said Strickler's heirs being his mother, several brothers and sisters, and the children of deceased brothers and sisters. One William L. Rider, son of Rebecca Rider, a deceased sister of said Strickler, was, on the 6th day of December, 1870, married to the plaintiff, who is now Sarah Hershberger, and said marriage relation continued until October 26, 1871, when said William L. Rider died, intestate, and without issue. In the month of December, 1870, after said marriage, the mother of said Strickler, for a valuable consideration, executed and delivered to said William L. Rider a deed of her undivided interest in said land. Said deed was recorded in the deed records of the county in which the land is situated in the month of June, 1890. Sarah Hershberger is now the wife of her co-plaintiff, John B. Hershberger, and resides with him in the state of Ohio. In the bill plaintiffs assert that the mother's share of said land was an undivided one-seventh thereof, and that said interest, by virtue of the deed above mentioned and the statutes of the territory of Washington relating to the rights of married people, became the common property of said William L. Rider and his wife, now Sarah Hershberger; also, that, as one of the heirs of said Strickler, said William L. Rider took an undivided thirty-sixth part of said land, which share also became the common property of said Rider and his then wife, under the statutes of the territory, and that upon the death of said Rider, his widow, now Sarah Hershberger, became the owner in fee-simple of an undivided one-half of all such common property,—that is to say, an undivided one-half of both of said shares; and she claims now to be the owner of the undivided one-half of said shares, and brings this suit to establish her title thereto against the defendants, and for an injunction to prevent the sale or disposition of said land, and for an accounting as to

the proceeds as to any and all portions thereof which may have been sold or disposed of by the defendants before the suit was commenced. The defendants are husband and wife, and claim title to the whole of said land, deraigned through and under a conveyance thereof made pursuant to a sale under a decree by the district court of the third judicial district of the territory of Washington, in a suit wherein several of the heirs of said Strickler, but not the plaintiffs, were made parties.

The bill fails to state many of the facts which should appear in order to make good the claim of title asserted by plaintiffs. It fails to state the date and place of Strickler's death. It fails to state any facts by which it can be ascertained under what act of congress the patent referred to was issued, or whether Strickler or his heirs could have acquired any interest in the land at any time prior to the date of the patent. It does not state whether the plaintiff Sarah Hershberger, and her former husband, William L. Rider, or either of them, lived in the territory of Washington, nor where they did live, during all or any part of the time between their marriage and the death of said Rider, nor the place where Rider died. It does not show the date of any of the proceedings in the suit mentioned, or of the sale made under the decree in said suit; and it does not allege the existence of any reasons or excuses for the delay on the part of plaintiffs in commencing this suit, nor that the plaintiffs had asserted any claim to the property at any time prior thereto. The bill in my opinion is defective, and the demurrer should be sustained for lack of allegations as to these important matters. Presumably only the heirs of Strickler living at the date of the patent were entitled to share as beneficiaries by that grant, and they would take by purchase, as grantees of the government, and not by inheritance, as the heirs of Strickler. Therefore it is necessary for the plaintiffs, in order to sustain their claims to the contrary, to show under what law and under what state of facts the patent was issued, and when Strickler or his heirs acquired ownership of the land. Otherwise, as William L. Rider died prior to the issuance of the patent, the court will be unable to discover that either he or his wife ever became in any way interested in the land, or that the mother of said Strickler ever acquired any interest in said land which she could have conveyed to any one in her life-time, as she also died before the date of the patent. Unless the heirs of Strickler took the land by inheritance, and not as grantees of the government, the court cannot determine who are the lawful heirs of Strickler, or what share or interest either would take without being informed as to the place of Strickler's death, and the laws in force in the country where he died, at the time of his death, and all the facts as to his family and relatives. Since the year 1869 several changes have occurred in the laws of the territory of Washington in relation to the property rights of married people, and it is necessary, therefore, in a suit such as this, to show the time of the inception of any claim to real estate depending upon the community property laws of the territory.

For the purpose of obtaining the opinion of the court as a guide to the parties in the future conduct of the case, and especially in preparing an

amended bill, if the plaintiffs shall elect to amend, counsel have argued the questions which may fairly arise in the case, assuming a state of facts not disclosed by the bill; and I am urged at this time to render an opinion upon these questions. The facts thus assumed are that Strickler became entitled to the land as a settler under the act of congress of September 27, 1850, (9 St. U. S. 496,) known as the "Oregon Donation Law," and the several acts amendatory thereof; that he died prior to the date of the deed alleged to have been given, in 1870, by his mother to William L. Rider; and that said William L. Rider and his wife, now the plaintiff Sarah Hershberger, during all the time of their marriage lived in the state of Ohio.

In view of all the facts thus assumed, together with what appears in the allegations of the bill, it is my opinion that the complainants cannot prevail in this suit, and that they have no interest whatever in the land referred to. Prior to December 2, 1869, the rights of all married people to real property situated in the territory of Washington, whether residents of the territory or elsewhere, were governed by the rules of the common law. On the date last mentioned the first statute enacted by the territory, changing the law as to the property rights of married people, was approved and went into effect. In November, 1871, which was after the death of Rider, another act relating to this subject was passed, supplanting the act of 1869. In 1873 the act of 1871 was repealed, and at the same session of the legislature the act of 1869 was re-enacted. It is therefore by virtue of this statute, passed in 1869, that the plaintiffs claim that Mrs. Hershberger, during the time she was the wife of Rider, acquired an interest in the land. In making this claim it is assumed that Strickler in his life-time owned the land, and that upon his death it descended to his heirs, and that the issuing of the patent subsequently was a mere formality, in confirmation of the title which before existed. I do not wish to be understood as expressing any opinion as to whether this assumption is or is not warranted.

The claim to an undivided one-half of an undivided thirty-sixth of the land alleged to have been inherited by William L. Rider can be disposed of in a few words. The statute relied upon by plaintiffs gives no support to this part of their contention. If Mr. Rider acquired any property in this state by descent, either before or after his marriage, it would not be community property. The first section of the act of 1869 in express terms declares that all property acquired by a husband after marriage, by gift, devise, or *descent*, and all property owned by him before marriage, shall be his separate property. Laws Wash. 1869, p. 318. This provision is entirely free from ambiguity and it is not an innovation upon the common law. It leaves a husband's estate and title in and to property so acquired or owned as it would be in the absence of any legislation on the subject. The second section of the act provides that "all property acquired after the marriage, by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property;" and, as the deed from Strickler's mother to Rider was made after the marriage, we may assume that if it became operative

to convey any interest in the land in question, such interest would be the common property of Rider and his then wife, if their rights were at all affected by this statute. As to this part of plaintiffs' claim, therefore, the question is raised whether said statute governs the rights of non-resident married people as to real property situated in the territory of Washington. I think that an easy and satisfactory answer to the question is found in the statute itself. Section 11 provides that, "in every marriage hereafter contracted in this territory, the rights of husband and wife shall be governed by this act, unless there is a marriage contract containing stipulations contrary thereto." And section 12 of the act reads as follows:

"The rights of husband and wife, married in this territory prior to the passage of this act, or married out of this territory, but who shall reside and acquire property herein, shall also be determined by the provisions of this act, with respect to such property as shall be hereafter acquired, unless so far as such provision may be in conflict with the stipulation of any marriage contract."

These two sections of the statute plainly indicate the intention of the legislature to limit the application of all the provisions of the act, and to furnish a rule for its interpretation which should amount to a disclaimer of any intention to change the property rights of people not inhabitants of the territory, and whose marriage contracts were not made in subjection to the laws of the territory. Section 2 of the act is an innovation upon the common law, and for that reason, by a familiar rule of interpretation, it is not to be given a more extended application than is necessary to give effect to all its provisions, and all parts of the act are to be considered together, so that sections 11 and 12 must be regarded as modifying and limiting section 2. This statute, from the time of its enactment until now, has always been understood by the legal profession and the people of the territory as being limited in its application, so that the rights of non-residents were not affected by it. The district and probate courts of the territory have acted in many instances according to such understanding of the law, and their adjudications have been acquiesced in, so that no case has ever been taken to the supreme court; hence, no decision covering the point has found a place in any published volume of reports. The fact that no precedent can be cited is a circumstance which shows that heretofore there has been no question as to the true interpretation of the act, or difficulty in understanding what is meant by sections 11 and 12 thereof. Another circumstance confirmatory of this is to be found in the fact that in 1879 the legislature again revised the law, and, in doing so, omitted entirely the provisions of sections 11 and 12. The important change made by the omission of these two sections must be regarded as significant, and it has been understood as making the community property law general, and applicable to all real estate within the territory, the title to which has passed by conveyances to married persons since the date of its enactment.

It has been argued with much earnestness and ability by counsel in support of the demurrer that the plaintiffs are not entitled to maintain

this suit in equity, for the reason that, having delayed for so many years to assert their claim, an action at law founded upon it would be barred by the statute of limitations, and in equity it should be regarded as stale, and therefore barred. Without more information as to the facts than I have yet obtained, I cannot coincide with defendants' counsel in this view. I do not consider that the plaintiffs should be precluded from maintaining this suit by reason of delay during the time the property was unoccupied, and before they had knowledge that other parties claimed exclusive ownership adversely to them. There has not been sufficient time since there has been visible adverse possession or an asserted ownership of the property adversely to the plaintiffs for any just claim which the plaintiffs may have to become stale, and it is my opinion that the suit is not barred by the statute of limitations of this state in force at the time the suit was commenced, nor by the principles of equity. An order will be entered sustaining the demurrer, and the plaintiffs may have leave to file an amended bill, if they elect to do so.